UNITED STATES of America,
v.
Allen DORFMAN, Defendant.
No. 71 Cr. 1177.

United States District Court,
S. D. New York.

Nov. 18, 1971.

See also D.C., 53 F.R.D. 477.

Whitney North Seymour, Jr., U. S. Atty. for Southern District of New York, for plaintiff; by Richard Ben-Veniste, New York City, of counsel.

Harris, Burman & Silets, Chicago, Ill., for defendant; by Harvey M. Silets, Chicago, Ill., of counsel.

### GURFEIN, District Judge.

The defendant, an alleged agent of a pension fund, has been indicted in seven counts for conspiracy to solicit kickbacks in violation of 18 U.S.C. §§ 1954, 1341 and 1343 (Count 1); for the substantive offense of agreeing to receive and receiving a kickback in violation of § 1954 (Count 2); and for the substantive offenses of wire (Counts 3–5) and mail (Counts 6–7) fraud in violation of §§ 1343 and 1341, respectively. The transaction involved a loan from the Central States, Southeast and Southwest Areas Pension Fund to the Neisco Corporation, through Neisco's President George A. Horvath. The defendant now makes a series of six motions which I will consider in sequence.

First, the defendant moves pursuant to Fed.R.Crim.P. 21(b) for a change of venue to the Northern District of Illinois, Eastern Division. He stresses: (1) that the Pension Fund and the residences of defendant and his counsel are located in the Chicago area; (2) that "nearly every significant act alleged in the indictment took place in whole or in part in Chicago"; and (3) that many of the witnesses and records will have to come from Chicago.

The Government, on the other hand, argues: (1) that as a general rule a criminal prosecution should be retained where the indictment was returned and where the Grand Jury investigation and trial preparation were made; see United States v. United States Steel Corp., 233 F.Supp. 154, 157 (S.D.N.Y.1964); (2) that trial here is imminent, the cause

being set down for November 30, while transfer would entail a considerable delay; and (3) that Neisco Corporation and its President George A. Horvath are located and reside in New York.

For the purposes of this motion, it is conceded by both sides that venue may lie either in this District or in the Northern District of Illinois. The matter is, therefore, for the discretion of the Court. Fed.R.Crim.P. 21(b); Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240, 84 S.Ct. 769, 11 L.Ed.2d 674 (1964).

The cases cited by the defendant are not compelling upon their facts. United States v. Jessup, 38 F.R.D. 42, 45 (M.D. Tenn.1965) involved a trial which promised to be much longer than the trial of this defendant will likely be. United States v. Olen, 183 F.Supp. 212 (S.D. N.Y.), mandamus denied sub nom. United States·v. Cashin, 281 F.2d 669 (2 Cir. 1960), involved the filing of a false proxy statement as well as a Section 17 violation under the 1933 Act. The basis of the charge was the "allegedly fraudulent maintaining of the books and records" which were in Alabama. Nearly all the witnesses resided in Alabama; and the defendants were "in financial straits." On these factors, the Court granted a change of venue.

In this case, I find the arguments of the Government more persuasive. Here the books and records of the Pension Fund in Chicago do not appear to be directly involved; there is no claim that they are false. There is no claim of financial hardship. The principal witness for the Government resides in New York. The Government's preparation for trial has been done here. The trial is imminent. The defendant and his counsel would obviously find it more convenient for the trial to take place in Chicago, but since the trial is not likely to be protracted the inconvenience to them is not so great as to be unfair. A defendant has, of course, no constitutional right to be tried at his home, although his residence is a factor to be considered, and I have taken it into account among

the other factors. Platt v. Minnesota Mining & Mfg. Co., supra, 376 U.S. at 245–246, 84 S.Ct. 769.

The motion for a change of venue is denied.

Second, the defendant moves to dismiss Counts three through five (the wire fraud counts) and Counts six and seven (the mail fraud counts) of the indictment. The Government has indicated that it will dismiss Counts six and seven. There remain for immediate consideration, then, the substantive counts charging violation of the wire fraud statute (18 U.S.C. § 1343).

In Counts three to five the indictment charges that from about February 1, 1967 to the filing of the indictment the defendant "unlawfully, wilfully and knowingly did devise and intend to devise a scheme and artifice to defraud and for obtaining money and ˙ property by means of false and fraudulent pretenses. It was the object of said scheme and artifice to defraud that defendant and said co-conspirators would cause and attempt to cause said Pension Fund to loan the Neisco Corporation the sum of $1,500,000." Paragraphs five and six of the conspiracy count are then realleged in the substantive Counts three to five. These paragraphs are set out in the margin.* It is finally alleged that, "for the purpose of executing said scheme and artifice to defraud," the defendant caused certain wire communications to be transmitted.

The gravamen of the indictment, on its face, is the "scheme and artifice to defraud" and quite clearly not the "obtaining money and property by means of false and fraudulent pretenses," although both are mentioned. While in some cases one may charge both types of wire fraud, the Government's theory, quite clearly set forth in paragraphs five and six of the indictment, is that the victim of the fraud was the Pension Fund from which the defendant was to obtain approval for a loan to be made to the Neisco Corporation, without divulging to the Board of Trustees of the Pension Fund that he was receiving a fee, kickback or commission from Horvath. In other words, the essence of the offense charged is the devising of a scheme or artifice to defraud the Pension Fund whereby the defendant was allegedly to receive money secretly, while purporting to give his best judgment to the Pension Fund without any consideration in mind other than the best interests of the Pension Fund.

■ The defendant grounds his motion, first, on the theory "that the asserted fraud was the obtaining of money and property by means of false and fraudulent pretenses." He then mounts his attack upon the sufficiency of the indictment by citing cases which purportedly establish that, in an indictment charging false representations to obtain money or property, the name of the person defrauded must be clearly alleged. In the first place, it is clear that here the scheme is not essentially founded on false representations which might indeed require a very specific naming of the victim. But more importantly, the name of the defrauded party, the Pension Fund, is fairly disclosed. The indictment is, therefore, of sufficient particularity to enable the defendant to prepare his defense and to protect himself against any second prosecution for the same offense.

* Paragraph 5 reads: "It was further a part of said conspiracy that defendant ALLEN DORFMAN, then being a special consultant to said Pension Fund would solicit, receive and agree to receive a fee, kickback and commission from George A. Horvath in return for attempting to gain approval from the Board of Trustees of said Pension Fund for a loan to the Neisco Corporation."

Paragraph 6 reads: "It was further a part of said conspiracy that defendant ALLEN DORFMAN and said co-conspirators would not divulge to the Board of Trustees of said Pension Fund or the individual members of local unions covered by said Pension Fund or employers who contribute to said Pension Fund that defendant ALLEN DORFMAN would receive a fee, kickback and commission from George A. Horvath."

Moreover, in practical terms, any element of surprise of which the defendant might complain has been removed by the responses to the defendant's extensive bills of particulars. See United States v. Brown, 335 F.2d 170, 172 (2 Cir. 1964); United States v. Pilnick, 267 F.Supp. 791, 795 (S.D.N.Y.1967).

The second ground of asserted insufficiency is that the indictment fails to "charge the defendant with obtaining any money or property from the Pension Fund as a result of the asserted scheme to defraud the Pension Fund." This argument is not tenable. It is not necessary to charge that the alleged kickback money obtained by the defendant actually came from the victim, or in this case, from the proceeds of the loan. It is enough that the defendant, who is alleged to have owed a fiduciary duty to the Fund by virtue of his position, agreed to use that fiduciary position to favor the Neisco loan in return for a cash payment that would not be disclosed to the Fund. In various contexts, the breach of the trust of a fiduciary who uses his position to make secret profits has been held to be fraud within the meaning of the wire and mail fraud statutes. See Post v. United States, 132 U.S. App.D.C. 189, 407 F.2d 319, 329 (1968), cert. denied, 393 U.S. 1092, 89 S.Ct. 863, 21 L.Ed.2d 784 (1969); United States v. Groves, 122 F.2d 87, 90 (2 Cir.), cert. denied, 314 U.S. 670, 62 S.Ct. 135, 86 L.Ed. 536 (1941); Shushan v. United States, 117 F.2d 110, 115 (5 Cir.), cert. denied, 313 U.S. 574, 61 S.Ct. 1085, 85 L.Ed. 1531 (1941); United States v. Hoffa, 205 F.Supp. 710, 716 (S.D.Fla. 1962). And in any event, the actual obtaining of money from the victim is not essential. United States v. Whiting, 308 F.2d 537, 540 (2 Cir. 1962), cert. denied, Crowe v. United States, 372 U.S. 909, 83 S.Ct. 722, 9 L.Ed.2d 718 (1963).

While the foregoing disposes of the motion to dismiss the indictment I am convinced that the allegation respecting the "obtaining money or property by means of false and fraudulent pretenses" is surplusage. Such an allegation would apply if the defendant were charged with obtaining the money from Horvath by pretending falsely that he would influence the action of the Pension Fund when he had no intention of so doing. But that is not the Government's theory, as is shown by the continued emphasis on "the scheme and artifice to defraud" without reference to "obtaining money by false pretenses." The charge is that the scheme was actually to influence the Fund for Horvath's benefit, not to fool Horvath out of a kickback the defendant never intended to earn.

In these circumstances, the defendant is entitled to a clear statement of the charge rather than to verbiage in statutory language which may be duplicitous. I shall, accordingly, do as Judge Metzner did in United States v. De Sapio, 299 F. Supp. 436, 446 (S.D.N.Y.1969). I shall treat the motion to dismiss as calling for relief under Rule 7(d) of the Federal Rules of Criminal Procedure and strike as surplusage the language "and to obtain money and property by means of false and fraudulent pretenses and representations" where it appears in the indictment (¶¶ 4, 10, 11). The motion to dismiss is otherwise denied.

Third, the defendant moves for an order to compel the Government to disclose which co-conspirators, if any, whether indicted or not, have been permitted, received or benefited from any immunity or favor granted or to be granted by the United States and to state the substance of said immunity and favor.

In Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) the Court laid down the principle that material "evidence favorable to an accused" may not, if requested by the defendant, be suppressed regardless of good faith. The defendant contends that the request he makes comes within the Brady doctrine. The question, therefore, is of the reach of Brady.

My conclusions are the following. The disclosure that a co-conspirator has been given immunity for the very crime charged against the defendant is certainly to be considered by the jury in weigh-

680

ing the credibility of the co-conspirator as a witness. The disclosure that, although such person has not been given immunity, he has been promised immunity is in the same category. That a recommendation would be made to the Court for a light sentence is only somewhere within the possible range of *Brady*. That the Court would be merely told of his cooperation with the Government is even less within the range.

I now turn to the reasons for these conclusions. Except for the actual grant of immunity in a formal proceeding or an explicit promise therefor, the nuances and, indeed, the unexpressed but often assumed benefit from being a Government witness are varied and uncertain. They do not readily lend themselves to a simple, categorical answer in response to a motion for discovery. The discovery procedure involves putting the prosecutor, rather than the witness, upon his oath. The discovery is better done at trial where the jury hears and sees the demeanor of the co-conspirator and observes, in addition, whether he is frank on this subject, which might serve as a guide to his credibility on other subjects. If the witness should lie about the promises made to him, the prosecutor, with or without the *Brady* rule, would be in honor bound to contradict his own witness and let the defendant make the most of it.

An outright, formal grant of immunity, on the other hand, stands as a different case, for it is easy enough to answer in simple English that such is the fact. In this case, the Government by bill of particulars has already given the defendant the name of Horvath and one other as named co-conspirators.

I shall treat the request as an additional item of the motion for a bill of particulars rather than as a motion under Rule 16(b) and, as to these two co-conspirators, rule that the Government shall state, as to each, whether he has obtained formal immunity or a promise thereof. The prosecution will not be required to state what promises or rewards he was given or is to be given, except for any actual promise of immunity.

Fourth, beyond certain items consented to by the Government, the defendant seeks discovery, inspection, production and copying, pursuant to Fed.R. Crim.P. 16, of any alleged receipt or other documents reflecting the source of payment to the defendant in the possession of the United States.

This request trenches upon an area of great importance to a defendant in this type of case. By his plea of not guilty he has put in issue whether he ever received any money as alleged or whether, if he got the money, it was for some lawful purpose. The disclosure of any document reflecting payment or source of payment, if such exists, helps to narrow the issues and serves somewhat like a bill of particulars.

The request is granted.

Fifth, the defendant moves for a further bill of particulars. subsequent to the filing of the superseding indictment. All the items have been disposed of either by consent or from the bench upon oral argument, except items 47g and 48d as to which I reserved decision. These request information on the manner and means by which the defendant caused to be transmitted in interstate commerce the communications by wire set forth in the wire fraud counts and caused the letters set out in the mail fraud counts to be placed in the Post Office and be delivered by mail. The Government has stated its intention to dismiss the mail fraud counts. On reflection, I think the defendant is entitled to the information requested on the wire fraud counts. The use of telephonic communication is a jurisdictional element in these counts. If the defendant can successfully move against these counts for jurisdictional deficiency, he should be given the means to do so. I realize that

the ultimate wire communication may sometimes be the end result of a course of conduct that does not entail a specific direction to use a wire. Where that is the case the Government may so state. But where the defendant is actually privy to the act of wire communication, the manner or means should be divulged. The request is, therefore, granted as to the wire fraud counts.

■ Sixth, the defendant moves, in view of the fact that the instant indictment has superseded indictment 71 Cr. 768, to adopt all his motions already filed as applicable to the instant indictment. That motion, on the Government's consent, is granted. However, I adhere to the decisions already rendered on those earlier motions. Since the motion to dismiss the conspiracy count on technical grounds is now rendered moot by the superseding conspiracy count, the only one of those earlier motions remaining for decision is the "Motion to Disclose Eavesdropping and/or Electronic Surveillance," and further the only surveillance sought to be discovered is a monitored conversation which occurred in 1964.

The defendant relies exclusively on Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). That case held "that surveillance records as to which any petitioner has standing to object should be turned over to him" (394 U.S. 182, 89 S.Ct. 971). However, the Court there also held that only a person whose Fourth Amendment rights have been violated has such standing. In this case, the surveillance took place on the premises of another who, moreover, had consented in writing to utilization of the microphone device. It appears that no one's Fourth Amendment rights were violated, and certainly not the defendant's. Therefore, this motion for disclosure is denied.

So ordered.