608 F.2d 542
 UNITED STATES of America, Plaintiff-Appellant,
v.
William Thomas KENT, Patrick Petroleum Corporation of
Michigan, Charles Douglas Robinson, Ronald Lamar
Meeks and Lauren Lee Smith, Jr.,
Defendants-Appellees.
 No. 78-3438.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 17, 1979.
 
 Dougald D. McMillan, Sp. Atty., U. S. Dept. of Justice, Dallas, Tex., for plaintiff-appellant.
 Michael E. Tigar, Samuel J. Buffone, Washington, D. C., for Patrick Petroleum and Robinson.
 Michael Ramsey, Houston, Tex., for Meeks.
 John J. Privitera, Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD, District judge.*
 VANCE, Circuit Judge:
 
 
 1
 The government appeals the dismissal of an indictment for mail fraud, 18 U.S.C. §§ 1341 and 2, and conspiracy to commit mail fraud, Id. § 371, charged against Lauren Lee Smith, Jr., William Thomas Kent, Patrick Petroleum Corp. of Michigan, Charles Douglas Robinson, and Ronald Lamar Meeks. These charges arose from the alleged defalcation by Smith, receipt by Kent, and use by the other appellees of confidential geophysical data belonging to Smith's employer, Union Oil Co. of California. We find the indictment sufficient and reverse the order of dismissal.
 
 I.
 
 2
 The indictment alleged that Smith, as a draftsman employed by Union Oil, had access to confidential documents concerning petroleum resources in the state of Mississippi. These documents included well completion reports, development well analysis, prospective well locations, recommended Union Oil bids, and related information. This material had been prepared for Union Oil by its employees, and Smith's employment agreement prohibited his disclosure of the company's confidential property.
 
 
 3
 Smith, Kent, Patrick Petroleum, Robinson, who was its vice president in Michigan, and Meeks, who was Patrick Petroleum's division land agent in Texas, allegedly "devised a scheme and artifice to defraud the Union Oil Company." This scheme consisted of fraudulently depriving Union Oil of "(a) its right to have its business and affairs conducted honestly . . . ; (b) its right to the conscientious, loyal, honest . . . performance of duties by . . . SMITH . . . free from . . . fraud; and (c) its property and secret profits obtained by . . . SMITH . . . ." The alleged scheme involved not only the fraudulent acquisition of Union Oil's property, but also the use of that property. Kent allegedly paid Smith to provide geological data, investment recommendations, and other confidential information, and then transmitted it to Patrick Petroleum, Robinson, and Meeks. Patrick Petroleum, Robinson, and Meeks allegedly used the purloined data to obtain leases for Patrick Petroleum, through hired real estate brokers in those areas where Union Oil had acquired or was seeking to procure leases. They then paid Kent a commission and assigned him an overriding royalty interest, and accomplished this through checks and assignments made to J. J. Paul and Harold Gray. Kent paid Smith a percentage of these commissions.
 
 
 4
 The first fifteen counts of the indictment incorporate the foregoing allegations and each describes one use of the mails in executing the fraudulent scheme. Counts 5, 6, 7, 9 and 12 allege that Smith, Kent, Patrick Petroleum, Robinson, and Meeks used the mails to send letters or memoranda between Robinson in the Michigan office and Meeks in the Texas office concerning oil leases of Mississippi property. Counts 1 through 4 and 11 charge that they used the mails to receive statements from the real estate brokers for their services and expenses in acquiring oil leases. Counts 5, 8, 12, and 13 allege that the five co-schemers used the mails to send checks to those brokers and accompanying memoranda to Robinson or Meeks. Counts 6, 8, 10, and 13 charge that they used the mails to send commission checks or royalty interest assignments to J. J. Paul or Harold Gray upon leasing oil property. Counts 14 through 16 allege that Kent, Patrick Petroleum, Robinson, and Meeks used the mails to send offers from Meeks or third parties to sell to Union Oil a part interest in some Patrick Petroleum leases.[1] Finally, count 17 charges that those four appellees conspired to use the mails to further this fraudulent scheme and artifice, and lists overt acts that include the events already mentioned, receiving stolen maps from Smith, holding meetings between Kent and Meeks to discuss leases, and instructing the brokers to lease particular oil properties.[2] These counts correspond to the theory that the appellees used Smith's data stolen from Union Oil to plan oil leases, used real estate brokers to obtain the leases, gave a commission and royalty interest to Kent upon acquiring leases, and made an offer to sell the oil rights to Union Oil, all following their entry into a scheme or artifice. Smith entered a plea of guilty to count 11, and, if he persists in that, the government will dismiss the other counts against him. The district court dismissed all seventeen counts of the indictment because it found the mailings to be only incidental to the fraudulent scheme charged. United States v. Kent, 457 F.Supp. 982 (S.D.Tex.1978).
 
 II.
 
 5
 An indictment is sufficient if it contains all the elements of the alleged offense. United States v. Lester, 541 F.2d 499, 501-502 (5th Cir. 1976); United States v. Mann, 517 F.2d 259, 266-267 (5th Cir. 1975), Cert. denied, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976). Indictment for mail fraud under 18 U.S.C. § 1341 requires (1) a scheme to defraud (2) which involves a use of the mails (3) for the purpose of executing the scheme. United States v. Shryock, 537 F.2d 207, 209 (5th Cir. 1976), Cert. denied, 429 U.S. 1100, 97 S.Ct. 1123, 51 L.Ed.2d 549 (1977);[3] See United States v. Maze, 414 U.S. 395, 399, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).[4]
 
 
 6
 In the present case the district court erred in delineating the scope of the alleged fraudulent scheme. As the lower court characterized it, the scheme involved only the "misappropriation of the data and the defalcation of the Union Oil employee." The indictment, however, alleges that the scheme being prosecuted involved more than a fraudulent acquisition. It charges that the scheme necessarily included Kent's acquisition of the purloined information, his sale of the data to Patrick Petroleum, its use of the data to acquire leases, and its attempted sale back to Union Oil and to others[5] of part interests in the lease. Use of the purloined data was part and parcel of the scheme alleged.
 
 
 7
 Because the district court misunderstood the scope of the alleged fraudulent scheme, it erred in determining that the purpose of the mailings charged was not to execute the fraudulent scheme:
 
 
 8
 (T)he scheme to defraud Union Oil of the honest services of Lauren Smith and to obtain Union Oil's secret geophysical data was in no way furthered or connected with the mailings made the basis of this indictment. Those mailings all related to the activities of Patrick Petroleum in acquiring oil and gas leases in Mississippi. . . . (E)very mailing alleged in the indictment was remote from the misappropriation of the data and the defalcation of the Union Oil employee.
 
 
 9
 United States v. Kent, 457 F.Supp. at 983-84. We conclude, contrary to the district court, that the mailings could be found to have been "for the purpose of executing such scheme or artifice or attempting so to do," 18 U.S.C. § 1341.
 
 
 10
 The requisite statutory purpose exists if the alleged scheme's completion could be found to have been dependent in some way upon the information and documents passed through the mails, Compare United States v. LaFerriere, 546 F.2d 182, 187, 187 n. 6 (5th Cir. 1977) With United States v. Johnston, 547 F.2d 282, 284 (5th Cir.), Cert. denied, 431 U.S. 942, 97 S.Ct. 2660, 53 L.Ed.2d 261 (1977), and if the use of the mails was "an integral part of the scheme to defraud," Compare United States v. Melvin, 544 F.2d 767, 775 (5th Cir. 1977) With United States v. Netterville, 553 F.2d 903, 910 (5th Cir. 1977), Cert. denied, 434 U.S. 1009, 98 S.Ct. 719, 54 L.Ed.2d 752 (1978). See United States v. Maze, 414 U.S. at 399-403, 94 S.Ct. 645.[6] This test of dependence does not demand that the use of the mails rather than of a private messenger or other means was itself essential to the fraudulent scheme or that "the success of the scheme actually depended on the mailings in a 'but for' sense." United States v. LaFerriere, 546 F.2d at 188 n. 6. Accord, United States v. Buchanan, 544 F.2d 1322, 1325 (5th Cir. 1977). It instead requires that the thing mailed was an integral part of execution of the scheme so that the use of the mails was in this way "incident to an essential part of the scheme." Periera v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954). Accord, United States v. Buchanan,544 F.2d at 1325.
 
 
 11
 The dependence test is not met if use of the mails is made after the scheme has been fully consummated, but a fraudulent scheme may depend on a mailing even after the defrauders have received the sought-after money or documents, because "the use of the mails after the money is obtained (or documents stolen) may be for the purpose of executing the fraud. United States v. Ashdown, 509 F.2d 793, 799 (5 Cir. 1975)." United States v. Zweig,562 F.2d 962, 964-65 (5th Cir. 1977). This is another way of saying that the scheme may embrace more than just fraudulent acquisition of money or documents. E. g., United States v. Bright, 588 F.2d 504, 508 (5th Cir. 1978), Cert. denied, 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979) (not just forgery of a will but appointing a co-schemer as the estate's attorney and guiding the forged will through probate; United States v. Becker,569 F.2d 951, 964 (5th Cir. 1978) (not just sale of fraudulent options but the purchaser's subsequent exercise of those options).
 
 
 12
 The fraudulent scheme involving the acquisition and use of Union Oil's property charged in the indictment in this case could be found dependent on the documents mailed: the instructions mailed to real estate brokers to enter particular leases, the payments mailed to those brokers for services, the commissions and royalty assignments mailed indirectly to Kent to obtain the stolen data, and the offer mailed to Union Oil to sell it a part interest. These mailings were not incidental to the scheme if the materials mailed were integral to the plan's execution. As characterized in the indictment, the mailings were not made after fruition of the fraud, but were necessary to complete the scheme. United States v. Zweig, 562 F.2d at 964-65; United States v. Ashdown, 509 F.2d at 799. Because the appellees' scheme could be found dependent on the mailings charged in the indictment, we conclude that the indictment for mail fraud should not have been dismissed by the district court.[7] Cf. Abbott v. United States, 239 F.2d 310, 313-315 (5th Cir. 1956) (scheme furthered by mailings between oil company employees who sold confidential geophysical information and recipient who bought oil leases).[8]
 
 III.
 
 13
 The basis for the offense of conspiracy to commit mail fraud, 18 U.S.C. § 371, is "an agreement to use the mails to defraud." Pereira v. United States, 347 U.S. at 11, 74 S.Ct. at 364. Accord, United States v. Netterville, 553 F.2d at 908-09. This offense also requires implication of each appellee in the conspiracy. United States v. Becker, 569 F.2d at 961; United States v. Netterville, 553 F.2d at 911. In the instant case, appellees[9] could be found to have conspired in a fraudulent scheme dependent on documents and information mailed. The indictment for conspiracy to commit mail fraud should not have been dismissed, for the same reasons that the Supreme Court reversed dismissal of an indictment in Sampson.
 
 
 14
 At the time the trial court dismissed the substantive counts it also dismissed the conspiracy count without stating additional reasons. . . . Since the conspiracy count on its face, like the substantive counts on their faces, properly charges a separate offense against each of the defendants, it was also error to dismiss the conspiracy count.
 
 
 15
 371 U.S. 75, 81, 83 S.Ct. 173, 176, 9 L.Ed.2d 136 (1962).
 
 
 16
 REVERSED AND REMANDED.
 
 
 
 *
 District Judge of the Northern District of Alabama, sitting by designation
 
 
 [1]
 The actual wording of the indictment charged that they "knowingly" or "willfully" used or "caused" the use of the mails
 
 
 [2]
 Each count of the indictment except the last also alleged responsibility as a principal to the mail fraud. 18 U.S.C. § 2
 
 
 [3]
 An implicit element of mail fraud is a specific intent to commit fraud. United States v. Vasilios, 598 F.2d 387, 392 (5th Cir. 1979); United States v. Foshee, 569 F.2d 401, 403 (5th Cir.), Modified on other grounds, 578 F.2d 629 (5th Cir. 1978). Because the statute does not expressly mention intent, an indictment for mail fraud need not specifically charge the necessary specific intent. United States v. Behrman, 258 U.S. 280, 288, 42 S.Ct. 303, 66 L.Ed. 619 (1922); United States v. Lester, 541 F.2d 499, 501 (5th Cir. 1976). In any event, the indictment under challenge here actually did allege intent by charging that each mailing was done "knowingly" or "willfully." See United States v. Kelley, 546 F.2d 42, 42-43 (5th Cir. 1977). We therefore reject appellees' argument that the indictment was insufficient because it omitted intent
 
 
 [4]
 These three requirements should preclude federal prosecutors from reaching fraudulent transactions only incidentally involving the mails, because such schemes should be prosecuted under state laws, Kann v. United States, 323 U.S. 88, 95, 65 S.Ct. 148, 89 L.Ed. 88 (1944); United States v. Edwards, 458 F.2d 875, 880 (5th Cir.), Cert. denied sub nom. Huie v. United States, 409 U.S. 891, 93 S.Ct. 118, 34 L.Ed.2d 148 (1972), or new federal legislation, United States v. Maze, 414 U.S. at 405 n. 10, 94 S.Ct. 645
 
 
 [5]
 The appellees' responsibility for the mailings was also sufficiently alleged. See Pereira v. United States, 347 U.S. 1, 8-9, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Toney, 598 F.2d 1349, 1355 (5th Cir. 1979)
 
 
 [6]
 The dependence test is not met if the "use of the mails is only collateral or incidental to the scheme, or made after the scheme has been fully consummated or has 'reached fruition.' " Henderson v. United States, 425 F.2d 134, 141 (5th Cir. 1970). Accord, Parr v. United States, 363 U.S. 370, 390-91, 393, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). E. g., United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974)
 
 
 [7]
 We also believe that the indictment for acting as a principal to the mail fraud, 18 U.S.C. § 2; See note 2 Supra, for the same reason should not have been dismissed
 
 
 [8]
 As Justice Black concluded in a similar mail fraud case,
 (T)he indictment in this case alleged that the defendants' scheme contemplated from the start the commission of fraudulent activities which were to be and actually were carried out both before And after the money was obtained from the victims. . . . We cannot hold that such a deliberate and planned use of the United States mails by defendants . . . to be "for the purpose of executing" a scheme within the meaning of the mail fraud statute. For these reasons, we hold that it was error for the District Court to dismiss these . . . substantive counts.
 United States v. Sampson, 371 U.S. at 80-81, 83 S.Ct. at 176 (emphasis added).
 
 
 [9]
 Smith was not charged in the conspiracy count