**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul Edmond DOWLING,
Defendant-Appellant.**

No. 83–5153.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1984.

Decided Aug. 10, 1984.

Charles C. Lee, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Michael D. Abzug, Los Angeles, Cal., for defendant-appellant.

Before CHAMBERS, TANG and BOO-CHEVER, Circuit Judges.

TANG, Circuit Judge.

## I.

## OVERVIEW

This case involves the unauthorized production and distribution of record albums containing copyrighted material performed by Elvis Presley. Appellant Paul Edmond Dowling appeals his felony convictions of mail fraud, interstate transportation of stolen property, and conspiracy to transport stolen property interstate. Dowling makes three arguments on appeal: (1) use of the mails to advertise copyright infringing material is not a use of the mail in furtherance of a scheme to defraud as required by the mail fraud statute; (2) interstate transportation of copyrighted material is not transportation of goods, wares or merchandise within the meaning of the National Stolen Property Act; and (3) certain testimony of a government witness offered to show intent was inadmissible hearsay, and the district court's admission of that evidence was reversible error. We reject Dowling's arguments and affirm his felony convictions.

## II.

## FACTS

Beginning in 1976, Dowling and co-defendant William Samuel Theaker, aka Vic Colonna, began manufacturing and distributing "bootleg" Elvis Presley phono records—phono records made without the consent of the copyright proprietors. Dowling and Theaker made seven unauthorized albums: one from a concert tape, one from the sound tracks of two Presley motion pictures, and the others from studio "out takes"[1] and tapes of Presley television appearances. The copyright proprietors never authorized release of the master recordings or out takes. The current recordings and at least one out take were obtained by assuring the owner that they were for personal use only.

At the direction of both Dowling and Theaker, Send Service, an addressing and mailing service located in Glendale, California, mailed over 50,000 catalogs and flyers advertising defendants' phonorecords. The catalogs were mailed throughout the United States during 1979 and 1980. Theaker collected the orders and then sent them to Dowling who mailed the requested albums from Maryland.

Defendants conducted a massive business. Two Maryland Post Office employees testified that during 1979–80 Dowling mailed hundreds of packages of albums every week. The mailings ranged from one record to packages weighing 20 to 30 pounds each. Dowling was spending at

1. "Out takes" are portions of tape not used in the original edited broadcast.

least $1,000 per week on postage during this period.

To give the albums an air of legitimacy, defendants used fictitious record labels, "Audifon" and "Amiga", and had the labels printed in Germany. Dowling and Theaker also printed across the bottom of the package: "ALL RIGHTS RESERVED. UNAUTHORIZED DUPLICATION IS A VIOLATION OF APPLICABLE LAWS."

On March 22, 1983, Dowling and co-defendants Theaker and Richard Minor were charged in a twenty-seven count second superseding indictment with conspiracy to transport stolen property interstate in violation of 18 U.S.C. § 371[2] [Count One]; interstate transportation of stolen property in violation of 18 U.S.C. § 2314[3] [Counts Two through Nine]; copyright infringement in violation of 17 U.S.C. § 506(a)[4] [Counts Ten through Twenty-Four]; and mail fraud in violation of 18 U.S.C. § 1341[5] [Counts Twenty-Five through Twenty-Seven].

The district court severed Dowling's trial from the trial of his co-defendants, and Dowling waived his right to a jury trial. The court found Dowling guilty of all counts against him[6] and sentenced him to a cumulative prison term of eighteen months: nine concurrent one-year terms on the misdemeanor copyright violations and three concurrent six-month terms on the three felony mail fraud counts. The court additionally placed Dowling on probation for five years on condition that he pay a $5,000 fine and perform fifteen hundred hours of community service. Dowling appeals from the felony convictions.[7]

### III.

### DISCUSSION

#### A. Scope of the Mail Fraud Statute

■ Dowling does not dispute the district court's factual findings that he mailed catalogs advertising his bootleg phonorecords. Rather, he argues that as a matter of law his mailing of the catalogs is not punishable under the mail fraud statute, 18 U.S.C. § 1341. Since the applicability of the mail fraud statute to Dowling's conduct is a pure question of law, we review de novo the district court's determination that such a conviction was proper. See United States v. Moreno-Pulido, 695 F.2d 1141, 1143 (9th Cir.1983).

---

**2.** 18 U.S.C. § 371 provides in pertinent part: If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** 18 U.S.C. § 2314 provides in pertinent part: Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud .... [s]hall be fined not more than $10,000 or imprisoned not more than ten years, or both.

**4.** 17 U.S.C. § 506(a) provides: Criminal Infringement.—Any person who infringes a copyright willfully and for purposes of commercial advantage shall be punished as provided in section 2319 of Title 18.

**5.** 18 U.S.C. § 1341 provides: Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

**6.** Counts Nineteen through Twenty-Four did not involve Dowling.

**7.** Dowling does not appeal from his copyright infringement convictions.

RCA Records (RCA) has the exclusive right to manufacture and distribute Elvis Presley sound recordings produced after July 26, 1954 (whether or not the recordings have been released). Under the terms of a 1973 contract, Presley's estate has the right to receive royalties, through RCA, on all Presley recordings made after March 1, 1973. Dowling does not dispute the fact that he had an obligation under 17 U.S.C. § 115[8] of the Copyright Act to report to RCA his intent to manufacture and distribute Elvis Presley phonorecords. He argues, rather, that the government can only prosecute him under the Copyright Act, 17 U.S.C. § 506(a), for his failure to report and that the government impermissibly prosecuted him under the Mail Fraud Statute.

We find Dowling's argument without merit. In *United States v. Belmont*, 715 F.2d 459 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 679 (1984), the court was faced with a similar argument in relation to the applicability of the National Stolen Property Act, 18 U.S.C. § 2314, to acts of copyright infringement. The *Belmont* court rejected appellant's argument that Congress intended to limit the prosecution of infringing acts specifically to the criminal infringement provisions of the Copyright Act, 17 U.S.C. § 506(a). Rather, in *Belmont* the court noted that the recent Piracy and Counterfeiting Amendments Act of 1982, Pub.L. No. 97–180, 96 Stat. 91, evidences Congress' intent to permit prosecutions under other applicable statutes. As stated in Section 2319(a) of the Piracy Amendments:

Whoever violates section 506(a) ... shall be punished as provided in subsection (b) of this section *and such penalties shall be in addition to any other provisions of title 17 or any other law.*

(emphasis added). The *Belmont* court concluded that while the wrongful copying of sound and video tapes and motion picture materials constituted copyright infringement, the interstate transportation of the stolen copies was also punishable under Section 2314 of the National Stolen Properties Act. *Id.* at 462.

■ We find the *Belmont* rationale applicable to the case before us. Dowling has advanced no evidence that Congress intended to provide Section 506 of the Copyright Act as the exclusive prosecutorial route with which to punish individuals who infringe copyrights. If the government can prove the requisite elements to support a mail fraud conviction in relation to Dowling's activities, we find nothing in the Copyright Act to prohibit prosecution of those acts under the Mail Fraud statute.

■ Dowling next argues that the government failed to establish that his acts constituted mail fraud under 18 U.S.C. § 1341. To prove mail fraud, the government must show that the accused participated in a scheme to defraud, and caused a use of the mails for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954); *United States v. Kaplan*, 554 F.2d 958, 965 (9th Cir.), *cert. denied*, 434 U.S. 956, 98 S.Ct. 483, 54 L.Ed.2d 315 (1977). Dowling does not dispute the fact that his catalog mailings constituted a "use" under the terms of the statute.

■ 1. *Scheme to Defraud.* It is settled in this Circuit that a scheme to defraud need not be an active misrepresentation. A nondisclosure or concealment may serve as a basis for the fraudulent scheme. *See United States v. Buckley*, 689 F.2d 893, 897–98 (9th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983);

---

8. 17 U.S.C. § 115 provides in pertinent part:
(b) Notice of Intention to Obtain Compulsory License.—
(1) Any person who wishes to obtain a compulsory license under this section shall, before or within thirty days after making, and before distributing any phonorecords of the work, serve notice of intention to do so on the copyright owner....

(2) Failure to serve or file the notice required by clause (1) forecloses the possibility of a compulsory license and, in the absence of a negotiated license, renders the making and distribution of phonorecords actionable as acts of infringement under section 501 and fully subject to the remedies provided by sections 502 through 506 and 509.

*United States v. Bohonus*, 628 F.2d 1167, 1172 (9th Cir.), *cert. denied*, 447 U.S. 928, 100 S.Ct. 3026, 65 L.Ed.2d 1122 (1980).

Dowling does not contest the fact that he concealed his activities from the copyright holders with the intent to deprive them of their royalties. Dowling argues, however, that the law in this Circuit is that non-disclosure may serve as a basis for the fraudulent scheme only when there is a fiduciary relationship between the person who fails to disclose and the person to whom disclosure is owed. He points out that the cases in this Circuit that hold that concealment may constitute fraud all involve a fiduciary type relationship. *See Buckley*, 689 F.2d at 898 (involving a public official's fiduciary duty to the citizenry); *Bohonus*, 628 F.2d at 1172 (involving an employee's deceitful concealment of secret profits from his employer); and *Cacy v. United States*, 298 F.2d 227, 229 (9th Cir.1961) (involving a seller's concealment of material facts to a buyer).

The government argues, on the other hand, that there is no sound basis to limit non-disclosure fraudulent schemes to situations in which there exists a fiduciary duty. The government intimates that the presence of illegal conduct alone may constitute the basis of the "fraud" element of a mail fraud prosecution.

■ We decline to adopt the "fiduciary duty" limitation advanced by Dowling nor can we accept the sweeping construction proposed by the government. Rather, we conclude that a non-disclosure can only serve as a basis for a fraudulent scheme when there exists an independent duty that has been breached by the person so charged. This independent duty may exist in the form of a fiduciary duty to third parties, *see Buckley*, 689 F.2d at 898; *Bohonus*, 628 F.2d at 1172; and *Cacy*, 298 F.2d at 229, or may derive from an independent explicit statutory duty created by legislative enactment. *See United States v. Brewer*, 528 F.2d 492 (4th Cir.1975).

In *Brewer*, the defendant made mail order sales of cigarettes from North Carolina to Florida. In doing so, she violated the Jenkins Act, 15 U.S.C. § 376,[9] by failing to register as a cigarette seller with Florida officials and by failing to furnish copies of certain invoices. *Id.* at 495. The *Brewer* court found that the breach of the independent explicit statutory duty of the Jenkins Act to register and to provide information to the Florida tax authorities was sufficient to form the basis of a scheme to defraud under the Mail Fraud Statute. *Id.* at 496.

■ The case before us is similar to the *Brewer* fact pattern. Dowling concedes that 17 U.S.C. § 115 of the Copyright Act created an explicit independent statutory duty to report to RCA his intent to manufacture and distribute Elvis Presley recordings. His mailing of the catalogs without disclosing his intent to manufacture and distribute the Presley phonorecords amounted to a breach of the statutory duty created by Section 115. We find that Dowling's breach of this independent statutory duty through his nondisclosure may form the basis of a scheme to defraud under the Mail Fraud Statute.

The result in *United States v. Gallant*, 570 F.Supp. 303 (S.D.N.Y.1983), does not suggest a different result. In *Gallant*, the

---

**9.** *15 U.S.C. § 376, provides in pertinent part:*

(a) Any person who sells or transfers for profit cigarettes in interstate commerce, whereby such cigarettes are shipped into a State taxing the sale or use of cigarettes, to other than a distributor licensed by or located in such State, or who advertises or offers cigarettes for such a sale or transfer and shipment, shall—

(1) first file with the tobacco tax administrator of the State into which such shipment is made or in which such advertisement or offer is disseminated a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business; and

(2) not later than the 10th day of each calendar month, file with the tobacco tax administrator of the State into which such shipment is made, a memorandum or a copy of the invoice covering each and every shipment of cigarettes made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, and the quantity thereof.

court held that defendant's failure to disclose his intention to *distribute* recordings of copyrighted musical performances to copyright owners was insufficient to prosecute him under the Mail Fraud Statute. *Id.* at 310. However, in *Gallant,* the defendant was a middleman distributor and not a manufacturer. *Id.* at 307. Because Gallant did not make the albums, the reporting requirements of 17 U.S.C. § 115 were inapplicable. *Id.* Thus, in *Gallant,* unlike the present case, there did not exist the breach of an explicit independent statutory duty upon which to base a scheme to defraud.

In conclusion, we stress that the narrowness of our holding permits nondisclosures to form the basis of a scheme to defraud only when there exists an independent duty (either fiduciary or derived from an explicit and independent statutory requirement) and such a duty has been breached. To hold otherwise that illegal conduct alone may constitute the basis of the fraud element of a mail fraud conviction would have the potential of bringing almost any illegal act within the province of the mail fraud statute.

2. *Use of the Mails in Furtherance of the Scheme to Defraud.* Dowling argues that even if his failure to disclose his intention to make and distribute albums was a scheme to defraud the copyright owners of their royalty fees, his mailing catalogs to advertise the albums was not "in furtherance" of the scheme. He contends that the mailings to potential customers could not further a scheme to deprive the copyright owners of their royalties. We find Dowling's argument unpersuasive.

■ A mailing need not be from the perpetrator to the victim to be in furtherance of the scheme to defraud. *See Pereira,* 347 U.S. at 8, 74 S.Ct. at 362 (mailing was from one bank to another, victim was defendant's wife); *Brewer,* 528 F.2d at 497 (mailing was from defendant to Florida cigarette buyers, victim was the State of Florida); *United States v. International Term Papers, Inc.,* 477 F.2d 1277, 1279 (1st Cir. 1973) (mailing was from defendant to students, victims were various universities and colleges).

■ Dowling's use of the mail to attract customers was an integral feature of the business' success. We find that the mailing of the catalogs was clearly in furtherance of his scheme to defraud the copyright owners of their royalty fees.

B. *Scope of the National Stolen Property Act.*

Dowling does not challenge the district court's factual findings that he transported bootleg phonorecords interstate. Rather he argues that he cannot be convicted of interstate transportation of stolen goods under 18 U.S.C. § 2314 when what he transported was not a "good, ware or merchandise" within the meaning of the statute. Since this is a question of law, we review de novo the district court's determination that such a conviction was proper. *Moreno-Pulido,* 605 F.2d at 1143.

Dowling's interpretation of 18 U.S.C. § 2314 is precluded by this Circuit's decision in *United States v. Belmont,* 715 F.2d 459 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 679 (1984). In *Belmont,* the court held that the unauthorized sale of videotape cassettes of copyrighted motion pictures involves goods, wares or merchandise within the meaning of the statute. The court specifically rejected the argument that Congress intended only the Copyright Act to cover this conduct. *Id.* at 462. The court observed that:

> The rights of copyright owners in their protected property are just as deserving of protection from interstate transportation as are the ownership interests of those who own other types of property. When society creates new kinds of property and thieves devise new ways of appropriating that property to their own use, the law against transporting property expands with the growth in the varieties of property.

*Id.* at 461–62 (footnote omitted).

■ *Belmont* is dispositive with regard to the facts before us. Dowling's unauthorized sale of phonorecords of copyrighted material clearly involved "goods, wares

or merchandise" within the meaning of the statute.

Dowling's argument that *Belmont* was effectively overruled by the Supreme Court in *Sony Corp. v. Universal City Studios,* —— U.S. ——, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), is without merit. The *Sony* opinion is inapposite to the question before us. *Sony* only dealt with the narrow question of whether non-commercial home videotaping constitutes "fair use". *Id.* at 795. *Sony* was silent on the question whether copyrights are property within the meaning of the National Stolen Property Act.

### C. *Hearsay*

Dowling challenges the admission of the testimony of Joan Deary, an RCA employee who testified for the government. He contends that Deary's testimony was hearsay and not within the co-conspirator exception to the hearsay rule. Rule 801(d)(2)(E), Federal Rules of Evidence.[10]

Deary testified that in 1979 co-defendant Theaker telephoned her and stated that he had heard that as RCA's Presley archivist she wanted to obtain copies of video cassettes of NBC show out takes. Theaker told her he could acquire copies for her if she would provide him with 50 "samplers"[11] in return. When Deary asked Theaker how he obtained the tapes, Theaker said: "I paid somebody $20,000 at NBC."

To fall within the co-conspirator exception to the hearsay rule, the proferred statement must be one that assists the conspirators in achieving their objectives. *United States v. Layton,* 720 F.2d 548, 556 (9th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1423, 79 L.Ed.2d 748 (1984). We find that Theaker's statement was made to advance the objectives of the conspiracy and that the district court properly admitted the testimony under the co-conspirator exception to the hearsay rule. Theaker's statement was intended to induce Deary to give him the samplers and furthered the conspiracy's objectives of obtaining new material.

### IV.

### CONCLUSION

We find that Dowling's mailing of the catalogs and the resultant breach of his statutory duty to report under 17 U.S.C. § 115 makes his acts punishable under the mail fraud statute 18 U.S.C. § 1341. We also find that Dowling's interstate transportation of bootleg phonorecords is punishable under the National Stolen Property Act, 18 U.S.C. § 2314. There was no evidentiary error in admitting Deary's testimony under Rule 801(d)(2)(E), Federal Rules of Evidence.

Dowling's felony convictions are AFFIRMED.

---

**10.** Rule 801(d)(2)(E) provides that:
    A statement is not hearsay if the statement is offered against a party and is a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

**11.** A "sampler" is a promotional record to be used by a radio station or retail store for promotional purposes.