**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Kevin M. COYLE, a/k/a David Winchester, Defendant–Appellant.**

**No. 90–5686.**

United States Court of Appeals, Fourth Circuit.

Argued March 7, 1991.

Decided Aug. 19, 1991.

As Amended Sept. 12, 1991.

Alan Mark Salsbury, Asst. U.S. Atty., Norfolk, Va., argued (Henry E. Hudson, U.S. Atty., on brief), for plaintiff-appellee.

Before WILKINSON, Circuit Judge, BUTZNER, Senior Circuit Judge, and BOYLE, District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

BUTZNER, Senior Circuit Judge:

This appeal raises the question whether Kevin M. Coyle violated the mail fraud statute, 18 U.S.C. § 1341, by using the mail to sell and distribute descramblers, intending to assist his customers to intercept and receive television programs without authorization from cable companies. We conclude that Coyle violated the statute and affirm his conviction.

## I

From January 1988 to September 1989, Coyle, trading as AMCOM, built and sold cable television converters, often called descramblers. The descramblers enable cable television customers to receive additional cable channels without paying the required fees to the company. He also advertised for sale a "Cable TV Data Blocker," which hinders cable companies from discovering the unauthorized use of a descrambler. Coyle advertised the descramblers in national publications that were distributed through the United States mail, received orders over the phone, and distributed the descramblers through United Parcel Service (UPS) and the United States mail. He received payment through the United States mail, either directly from his customers or from UPS, which collected the purchase price from customers upon delivery.

A six-count indictment charged Coyle with knowingly, unlawfully, and willingly devising a scheme to defraud cable companies of money and using the mails to execute his scheme. The district court convicted him on all six counts following a bench trial. At sentencing, the court found that he had sold in excess of a thousand de-

William Ryland O'Brien, Hudgins, Ege & O'Brien, P.C., Virginia Beach, Va., for defendant-appellant.

scramblers, causing the cable television industry to lose an estimated one million dollars.

## II

■ Title 47 U.S.C. § 553(a) provides:

(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

(2) For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

Ample evidence supports the district court's findings that Coyle assisted "in intercepting or receiving" cable transmissions without authorization.

■ Ample evidence also supports the district court's findings that Coyle used the United States mail to conduct his business. With respect to count 1, the evidence showed that he received by mail a cashier's check payable to AMCOM for a descrambler. The proof showed, as charged in count 2, that Coyle mailed a package containing a descrambler. With respect to counts 3, 4, 5, and 6, the parties stipulated that descramblers were delivered by UPS, which collected money from each customer at the time of delivery. UPS then mailed the checks mentioned in each count to AMCOM to pay for the descramblers. This evidence was sufficient to show Coyle's use of the mails within the meaning of the mail fraud statute. In *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954), the Court held that "it is not necessary to show that [the defendants] actually mailed or transported anything themselves; it is sufficient if they caused it to be done."

Coyle concedes that the government's evidence about the unauthorized reception of cable transmissions established a prima facie case for prosecution of a violation of § 553 (reply brief at 1), and he does not contest his use of the mail. He contends, however, that the evidence is insufficient to establish a violation of the mail fraud statute. Coyle's contention raises a question of law about the application of the mail fraud statute to his conduct. We review *de novo* the district court's judgment that the statute applied.

## III

The mail fraud statute, 18 U.S.C. § 1341, provides in part:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice [uses the mail, shall be fined, etc.]

Coyle argues that in order to prove a violation of the mail fraud statute the government must prove one of the following acts or omissions: "(1) affirmative misrepresentations of existing fact, (2) false promises as to the future, (3) the failure of a fiduciary to make disclosure, and (4) the failure to make disclosure under an independent statutory duty." (brief at 5) He claims that the government did not prove any of these elements.

Coyle distinguishes *United States v. Brewer*, 528 F.2d 492 (4th Cir.1975), on which the government relies. He points out that Brewer was under a statutory obligation to disclose the names of her cigarette customers to taxing authorities. Coyle relies on *United States v. Dowling*, 739 F.2d 1445 (9th Cir.1984), *rev'd on other grounds*, 473 U.S. 207, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (reversing convictions based on National Stolen Property Act, 18 U.S.C. § 2314, without reviewing convictions based on Mail Fraud Act). *Dowling* emphasized the statutory duty of disclosure under the Copyright Act in upholding a mail fraud conviction for manufacturing and distributing bootleg phonograph

records. He also cites *United States v. Gallant*, 570 F.Supp. 303 (S.D.N.Y.1983), which dismissed a mail fraud prosecution because there was no fiduciary or explicit statutory duty of disclosure.

## IV

The mail fraud statute is not as restrictive as Coyle contends. *Durland v. United States*, 161 U.S. 306, 313, 16 S.Ct. 508, 511, 40 L.Ed. 709 (1896), teaches that "any scheme or artifice to defraud" is to be construed broadly. As the Court recently reiterated, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358, 107 S.Ct. 2875, 2881, 97 L.Ed.2d 292 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)). The mail fraud statute does not by its terms define fraud. It generally leaves to other statutes the specifications of what conduct constitutes a scheme to defraud. *Parr v. United States*, 363 U.S. 370, 389, 80 S.Ct. 1171, 1182, 4 L.Ed.2d 1277 (1960). Title 47 U.S.C. § 553, which was enacted to protect the revenue of television cable companies from unauthorized reception of their transmissions, is such a statute.

 It is immaterial that § 553 has no requirement for disclosure. Coyle's violation of § 553, coupled with his use of the mails, violated two provisions of the mail fraud statute. First, he manufactured and distributed devices intended by him to enable his customers to receive cable programs without paying for them. This was a scheme or artifice to defraud within the meaning of the mail fraud statute because it wronged the cable companies in their "property rights by dishonest methods or schemes." *McNally*, 483 U.S. at 358, 107 S.Ct. at 2881. Second, Coyle intentionally assisted his customers to obtain the service of cable companies without authorization by fraudulently pretending and representing that they were bona fide subscribers. By mailing a newsletter, he also advertised devices intended to conceal his chicanery from the companies. His deceit cost the companies an estimated one million dollars.

 It is immaterial that Coyle did not use the mail to make misrepresentations to his customers. The victims of mail fraud, in this case the cable companies, need not be the recipients of the material that is mailed. *See Pereira*, 347 U.S. at 8–9, 74 S.Ct. at 362–363; *Brewer*, 528 F.2d at 497. It is of no consequence that Coyle could have been prosecuted under § 553. The possibility of such a prosecution does not preclude the United States Attorney from electing to charge violation of the mail fraud statute. *See Dowling*, 739 F.2d at 1448; *Brewer*, 528 F.2d at 498.

 Finally, Coyle protests that construing the mail fraud statute to encompass his conduct will mean that "every criminal act which in any manner uses the mails is mail fraud." (reply brief at 3). The Supreme Court exposed the fallacy of this argument more than 60 years ago. Conduct must involve fraud to fall within the coverage of the Act. Even though the concept of fraud within the meaning of the mail fraud statute is broader than common law fraud, it is not limitless. It is characterized by "trick, deceit, chicane, or overreaching ... [and] dishonest methods or schemes." *Hammerschmidt*, 265 U.S. at 188, 44 S.Ct. at 512. The Court has expressly rejected the notion that mail fraud can encompass deprivation of property by such crimes as "theft by violence ... robbery or burglary." 265 U.S. at 188, 44 S.Ct. at 512. Coyle's conviction does not open the floodgates of federal criminal jurisdiction.

AFFIRMED.